IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| INDUSTRIAL PRINT TECHNOLOGIES, LLC, | Case No. 3:15-md-02614-M |
| Plaintiff, | **This Document Relates to** |
| v. | |
| CENVEO, INC. AND HEWLETT-PACKARD COMPANY | Case No. 3:15-cv-00165-M |
| O'NEIL DATA SYSTEMS, INC. AND HEWLETT-PACKARD COMPANY | Case No. 3:15-cv-01100-M |
| O'NEIL DATA SYSTEMS, INC. AND HEWLETT-PACKARD COMPANY | Case No. 3:15-cv-01104-M |
| FORT DEARBORN COMPANY AND HEWLETT-PACKARD COMPANY, | Case No. 3:15-cv-01195-M |
| Defendants. | **FILED UNDER SEAL** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court previously determined that Defendants Cenveo, Inc. (Cenveo) and O'Neil Data Systems, Inc. (O'Neil) (together, "Movants") are entitled to recover attorneys' fees from Plaintiff Industrial Print Technologies, LLC (IPT) under 35 U.S.C. § 285. *See* Ord. 8 (ECF No. 449). Specifically, the Court awarded fees based on its finding that IPT was on notice, beginning February 26, 2016 with respect to Cenveo and beginning March 1, 2016 with respect to O'Neil, that Movants did not perform any variable data print (VDP) jobs within the scope of the accused VDP Patents. *Id.* 7-8. However, IPT continued to litigate its claims against Movants and

sought discovery on non-infringing practices until November 4, 2016. *Id.* 8. The Court determined that IPT's "failure to timely reevaluate its litigation position in light of evidence that O'Neil and Cenveo did not practice the patented methods, makes these cases exceptional for the purposes of fee-shifting under 35 U.S.C. § 285," and therefore awarded Movants their "fees . . . incurred in litigating these cases from May 1, 2016, a reasonable time after each [Movant] provided definitive notice of non-infringement to Plaintiff, until the time the parties stipulated to dismiss the cases with prejudice, November 4, 2016." *Id.* The Court directed Movants to submit a declaration of counsel, providing evidence of their legal fees during this period, including the hours spent, rates charged, and experience of the professionals who incurred them, and advised that "[o]nce this is done, a final judgment awarding attorney's fees will be issued." *Id.*

Pursuant to the Court's instructions, Movants submitted evidence that they incurred $404,016.78 in attorney's fees from May 1, 2016 until November 4, 2016. *See* Edward Reines Decl. 8 (ECF No. 464); Jackob Ben-Ezra Decl. 7 (ECF No. 465). Movants also submitted evidence that they incurred $70,616.05 in bringing the motion for attorneys' fees and preparing the declarations required by the Court. Reines Decl. 9-10; Ben-Ezra Decl. 8. Movants thus seek a total of $474,632.83 in attorneys' fees from IPT. IPT filed objections (ECF No. 470) to Movants' evidence and proposed that the Court reduce Movants' award to $41,895.88. Movants responded to IPT's objections (ECF No. 471). The Court then referred the matter to

the undersigned for findings and a recommendation as to the amount of fees Movants should be awarded.

Courts apply a two-step process to determine the appropriate sum of attorneys' fees to award. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). First, courts determine the lodestar, which is the reasonable number of hours expended on the litigation multiplied by the reasonable hourly rates for the participating lawyers. *Kellstrom*, 50 F.3d at 324. Then, courts in the Fifth Circuit decide whether to accept the lodestar or adjust it, considering the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] *Id.* at 329. *See also Maxwell v. Angel-Etts of Ca., Inc.*, 53 F. App'x 561, 569 (Fed. Cir. 2002) (approving of "hybrid lodestar approach" under 35 U.S.C. § 285 where district court first determines the lodestar, then increases or decreases it "based on a variety of factors"); *SAP Am., Inc. v. Investpic, LLC*, 2018 WL 6329690, at *6 (N.D. Tex. December 4, 2018) (Kinkeade, J.) (awarding attorneys' fees under 35 U.S.C. § 285 after first determining the lodestar, then adjusting the sum under the *Johnson* factors), *aff'd*, 779 F. App'x 744 (Fed. Cir. 2019). While a court is required to explain its reasons for

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19.

any adjustments to the number of hours spent or to the lodestar, it is not required to do a line-by-line analysis. *See Maxwell*, 53 F. App'x at 569. A court may make across-the-board cuts, so long as it sets forth a concise reason for the cuts. *Id.*

The undersigned has independently reviewed Movants' evidence, including declarations, supporting invoices, and billing records submitted by Edward Reines of Weil, Gotshal, & Manges LLP (Weil) and Jackob Ben-Ezra of Fish & Richardson (Fish), as well as IPT's objections to the evidence. The evidence shows that Weil and Fish represented all the defendants in this MDL patent case, including Movants, during the relevant period. Hewlett-Packard Company (HP) paid the fees incurred by all the defendants. The legal team at Weil comprised one senior partner, two senior associates, one junior associate, and four paralegals who generally bill at hourly rates of $1,165.00-$1,210.00 for senior partners, $600.00-$725.00 for junior associates, and $225.00-$375.00 for paralegals based on experience level. The Fish team included two principals and one of counsel attorney who generally bill their time at hourly rates ranging from $885.00-$990.00 for principals to $525.00-$645.00 for non-principals. However, Weil and Fish negotiated confidential discounted rates with Movants for their work on this case and exercised a certain degree of billing judgment with respect to the fee request presented to the Court.

To account for the fees incurred for work performed for the benefit of all the defendants, the law firms apportioned their fees. Specifically, Reines explained:

> [T]here were seven cases included in this MDL action, with the sync patent asserted in one case and the VDP patents asserted in six cases. For the purposes of apportioning fees, the two O'Neil cases asserting the VDP patents are treated as one consolidated case. The cases belatedly dismissed

with prejudice involved two defendant groups, Cenveo and
O'Neil. As such, a 2/6ths apportionment has been applied
to calculate the common fees attributable to the two cases
(Cenveo and the consolidated O'Neil VDP cases) for which
fees were awarded.

Reines Decl. 5-6, ¶ 14. Fish followed the same approach. Ben-Ezra Decl. 4-5, ¶ 12.

Additionally, Reines stated that Weil omitted from its request (1) "all billing entries

related solely to defendants other than Cenveo and O'Neil," (2) "all fees related to what

may be considered administrative work," and (3) "all fees generated by litigation

support services personnel, IT personnel, and all other non-attorney and non-

paralegal supporting staff." Reines Decl. 7, ¶ 16. Ben-Ezra made the same

representations with respect to Fish's fees. Ben-Ezra Decl. 6, ¶ 14. Finally, where it

was impossible to separate work attributable to Cenveo and O'Neil from work

related to other aspects of the case, Weil reduced the fee charged by 50%. Reines

Decl. 7, ¶ 16.

After these adjustments, Weil seeks to recover $271,918.38 for 1,646.6 hours of

work attributable to Cenveo and O'Neil during the relevant period, and Fish seeks

$132,098.40, for 598.5 hours of work. Weil further seeks to recover $41,716.27 for

144.1 hours of work performed by four attorneys and two paralegals in bringing the

motion for fees, and $17,776.68 for 37.9 hours of work performed by three attorneys

and one paralegal in preparing the supporting declaration required by the Court. Fish

seeks an additional $11,123.10 for 17.8 hours of work performed by two attorneys in

preparing its declaration.

IPT objects that Movants' fee request improperly includes $70,616.00 in fees

incurred in bringing the motion for attorneys' fees and preparing the declarations

required by the Court after the motion was granted. The undersigned agrees that Movants' inclusion of this amount disregards the Court's Order. Movants had requested the Court include in any award "the fees incurred in bringing [the] motion." Mot. Br. 25 (ECF No. 189-1). But the Court's Order only authorized fees incurred in litigating IPT's claims against Cenveo and O'Neil from May 1, 2016 until November 4, 2016 and "otherwise denied" the motion for attorneys' fees. Ord. 8. Therefore, IPT's first objection should be SUSTAINED to the extent it disputes fees associated with bringing the motion for attorneys' fees and preparing the necessary declarations.

IPT also objects that Movants' fee request improperly includes fees for work performed on behalf of HP or Fort Dearborn in connection with their dismissed causes of action or for work performed in the "common case" against HP or the other defendants. Indeed, IPT contends most of the work performed during the relevant period would have been performed for HP even if IPT had dismissed Movants before May 1, 2016. IPT contends that it is responsible for no more than $154,564.74 in fees which can be solely attributable to work done for Cenveo and O'Neil. The undersigned disagrees.

IPT asserted overlapping infringement allegations against HP and several of its customers. These defendants elected to pursue a common defense and sought, and obtained, consolidation in an MDL action. Weil and Fish billed most of the fees incurred to all the defendants collectively. But the Court ordered IPT to pay only Movants' fees incurred from May 1, 2016 until November 4, 2016. Ord. 8. The declarations submitted by Weil and Fish explain how the law firms made an entry-by-entry analyses of the fees charged to all the defendants during the relevant time period

and eliminated various categories of fees that were not recoverable under the Court's Order, including all billing entries related solely to defendants other than Cenveo and O'Neil. Reines Decl. 5-6, ¶ 16; Ben-Ezra Decl. 4-5, ¶ 14. Weil also reduced the fee charged by 50% where it was impossible to separate work attributable to Cenveo and O'Neil from work related to other aspects of the case. Reines Decl. 7, ¶ 16. After this first level of review and reduction, Weil and Fish applied a two-sixths apportionment to the common fees.

Movants' counsel's apportionment approach is consistent with the Court's Order awarding Movants' fees incurred in litigating the patent cases brought by IPT. Indeed, a similar approach has been followed by other courts. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2018 WL 2724019, at *1 (N.D. Cal. June 6, 2018) (accepting accused infringer's showing that about 25% of its total fees was based on work solely related to the patent for which § 285 fees were awarded, where the accused infringer's lawyers had not separately billed for each asserted patent), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019); *Zaman v. Kelly Servs.*, 2017 WL 2335601, at *7 (N.D. Cal. May 30, 2017) (holding that when a "court cannot determine precisely which hours were spent pursuing [frivolous] claims as opposed to [non-frivolous] claims," the "court may exercise its discretion to award a percentage of the fees requested, provided that its choice of a percentage is guided by reason"). And this method of apportionment achieves the "essential goal in shifting fees": that is, to "do rough justice"; perfection is not required. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve

7

auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). Movants' evidence supports a finding that the Court cannot determine precisely which hours were spent pursuing Movants' claims as opposed to claims against other defendants and that Movants' counsel's apportionment approach is guided by reason. Accordingly, IPT's objection to Movants' counsel's fee apportionment should be OVERRULED.

IPT next challenges the rates charged by Defendants' attorneys. The evidence submitted in support of Movants' fee request establishes that Weil's standard billing rates during the relevant period ranged from $1,165.00-$1,210.00 for senior partners to $600.00-$725.00 for junior associates, and between $225.00-$375.00 for paralegals based on experience level, and Fish's standard rates during the relevant period ranged from $885.00-$990.00 for senior of-counsel to $525.00-$645.00 for mid-level associates.  Reines Decl. 2, ¶ 4; Ben-Ezra Decl. 2, ¶ 4. However, the law firms charged Movants confidential, discounted rates. Reines Decl. 2, ¶ 4; Ben-Ezra Decl. 2, ¶ 4. IPT argues that Weil and Fish improperly seek to justify these fees by comparing them to fees charged by Silicon Valley law firms. IPT contends the appropriate legal market is Dallas, not the Silicon Valley. The Court agrees that Dallas is the appropriate legal market but finds both the standard rates and the confidential, negotiated rates charged by Weil and Fish to be reasonable.

The hourly rate is determined "according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "[T]he relevant market for purposes of determining the prevailing rate to be

paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Rates are reasonable when they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's services." *SortiumUSA, LLC v. Hunger*, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.) (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)); *see also Merge Office Interiors, Inc. v. Alfa Adhesives, Inc.*, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (Lynn, J.) (determining reasonableness of hourly rate "[b]ased on the Court's knowledge of rates charged for legal services by attorneys with the level of skill, competence, and ability of Plaintiff's counsel and paralegal in the Dallas legal community, and its experience in setting attorney's fees in other cases").

Movants assert that Weil's standard rates were "commensurate with the prevailing market rates charged by Weil's peer firms in the Silicon Valley . . . and nationwide for similar services," Reines Decl. 6, ¶ 15, but other evidence supports a finding that the rates charged are reasonable for the Dallas legal market as well. The 2017 American Intellectual Property Law Association (AIPLA) Report of the Economic Survey, which sets forth the average hourly billing rates in 2016 for intellectual property attorneys, shows that third quartile rates in Texas in 2016 for partners were $819.00 and that 90th percentile rates were $900.00. Am. Intellectual Prop. Law Ass'n, 2017 Report of the Econ. Survey, at I-27. The AIPLA

Report also shows that third quartile rates for associates in Texas were $565.00, and that 90th percentile rates were $682.00. *Id.* at I-29. Other courts in this district have referred to the AIPLA Report to determine the reasonable rate for an attorneys' fees award. *See, e.g., Ford Global Techs., LLC v. New World Int'l, Inc.*, 2019 WL 1531759, at *2 (N.D. Tex. Apr. 9, 2019); *Investpic, LLC*, 2018 WL 6329690, at *5; *Richmond v. SW Closeouts, Inc.*, 2016 WL 4368305, at *4 (N.D. Tex. Aug. 16, 2016). *See also Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988) ("As the law makes clear, the district court properly considered the [AIPLA] surveys."). *See also Broad. Music, Inc. v. Outlaw Country Soc. Club, Inc.*, 2019 WL 7882557, at *1-2 (E.D. Tex. June 13, 2019) (awarding fees "between the 75th percentile and 90th percentile" where attorney "'represent[ed] a variety of clients in intellectual property litigation throughout the United States' and practiced for more than two decades"); *but see Investpic, LLC*, 2018 WL 6329690, at *5 (declining to award fees in the 90th percentile where evidence "show[ed] that the[ ] lawyers have the experience with litigation of intellectual properties case" but the record "[l]acke[ed] more support for these rates").

Here, the evidence demonstrates that Mr. Reines has the skill, experience, and reputation in the intellectual property law community to place him in the top echelon of such lawyers in the country. He is a senior partner at Weil, a highly respected international law firm. Reines Decl. 2-3, ¶ 6. Over the past 12 years, he has been recognized by The Daily Journal as one of the "Top Intellectual Property Litigators" in California; he has appeared in the IP Law & Business magazine as

one of the "Top 50 Under 45" American IP lawyers; and he has been recognized by IP Law & Business as one of the "Top 75 IP Litigators" nationally. *Id.* The evidence further establishes that the associate attorneys at Weil and Fish, another highly regarded intellectual property law firm, who worked on the case possess exemplary skills and significant experience. *Id.* 3-4, ¶¶ 7-9. Except for the standard rate charged for Mr. Reines's time, the standard rates charged by Weil and Fish in this case are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation. *See Raniere v. Microsoft Corp.*, 3:15-cv-0540-M, ECF No. 187 at 3-4, 6, n.2 (N.D. Tex. 2016) (Lynn, J.) (finding published hourly rates between $525.00 and $1,100.00, as well as confidential negotiated rates, reasonable as of March 2016). *See also Michaels Stores Procurement Co. v. DMR Constr., Inc.*, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019) (Boyle, J.) (acknowledging that rates on the higher end of the spectrum may be reasonable given the circumstances of the representation and the attorney's experience). But Movants seek to recover based on the confidential, discounted rates charged by the law firms, not the standard rate. And the discounted rate for all the lawyers is reasonable for the Dallas legal market. IPT's objection to the hourly rate charged by Movants' counsel should be OVERRULED.

The undersigned reaches a different conclusion with respect to the rates charged by Weil's paralegals. The undersigned finds that a reasonable fee for work performed by highly proficient paralegals in Dallas is $225.00 per hour. *See Michaels Stores*, 2019 WL 399074, at *2 (finding $225.00 per hour a reasonable fee for

paralegals); Paralegal Division Compensation Survey from the State Bar of Texas

Department of Research and Analysis (2014) (finding that the median hourly rate

for a paralegal was $121.00). Accordingly, IPT's objection to the hourly rate charged

by Movants' paralegals should be SUSTAINED. The rate charged by Weil's paralegals

should be reduced to a maximum of $225.00 per hour, which results in a reduction of

$1,149.18[2] overall.

IPT also objects to the number of hours Weil and Fish expended on this

litigation during the relevant time period. Specifically, IPT argues that the law firms

"block-billed." Block-billing is a time-keeping method where an attorney records

the total daily time spent working on a case, rather than itemizing the time

expended on specific tasks, which prevents a court from accurately determining

the time spent on any particular task. *See Fralick v. Plumbers & Pipefitters Nat'l*

*Pension Fund*, 2011 WL 487754, at *10 n.18 (N.D. Tex. Feb.11, 2011) (Fitzwater,

J.). IPT contends that Movants' fee request should be reduced for this improper billing

practice. The undersigned disagrees. The allegedly objectionable time entries do not

prevent meaningful review. Contrary to IPT's characterization, the billing entry IPT

---

[2] During the relevant time period, it appears that only paralegals William Talbott's
and Sean Mills's adjusted rates exceeded $225.00. *See* Reines Decl. 8, ¶ 18. Mr.
Talbott billed 97.6 hours at a rate of $259.20, and Mr. Mills billed 4.2 hours at a
rate of $251.10. *Id.* Together, their apportioned billing total from May 1, 2016 to
November 4, 2016 equaled $8,784.18. Discounting each of their rates to $225.00,
the undersigned calculates Mr. Talbott's adjusted total to be $7,320.00 (97.6 hours
X $225.00 per hour) and Mr. Mills's to be $315.00 (4.2 hours X $225.00 per hour).
After apportioning each paralegal's adjusted total by two-sixths, the undersigned
comes to $2,440.00 for Mr. Talbott and $105.00 for Mr. Mills. This results in a
reduction of $1,149.18 from $8,784.18.

identifies as an example of block-billing does not reflect improper billing. *See* Objs. 18-19 (ECF No. 469-1) (pointing out billing by attorney Audrey Maness on October 5, 2016 as an example block-billing). Rather, it explains how the senior associate assigned to the case spent almost an entire workday (6.9 billable hours). The entry describes with particularity the specific tasks Ms. Maness undertook for which Weil seeks to recover. Although it does not state the time spent on each individual task, this entry and the other entries identified by IPT are sufficient for the Court to determine that each attorney billed a reasonable amount of time, on an individual basis, for the tasks recorded. Even if Weil engaged in block-billing, the declaration Weil submitted in support of the fee award explains that the law firm took a conservative approach to entries that describe more than one task and applied a 50% reduction to such entries. Reines Decl. 7-8, ¶ 16. IPT's objection to alleged block-billing by Movants' counsel should be OVERRULED.

Finally, IPT objects that Movants' counsel failed to exercise billing judgment because the declarations submitted in support of the fee award fail to identify any time that was written off as unproductive, excessive, or redundant. Even though a line-by-line analysis is not required, s*ee Maxwell*, 53 F. App'x at 569, the undersigned independently reviewed IPT's chart containing objections to each of Movants' billing entries. The undersigned does not agree with IPT's characterization that Movants' counsel failed to exercise billing judgment or billed for unproductive, excessive, or redundant time. IPT's objection based on an alleged lack of billing judgment should be OVERRULED.

After making the recommended adjustments, multiplying the reasonable number of hours expended by each legal professional on the litigation by the reasonable hourly rate charged by Movants' counsel results in a lodestar of $402,867.60 ($270,769.20 for Weil, and $132,098.40 for Fish).

Considering all of the *Johnson* factors—especially (1) the time and labor required, (2) the novelty and difficulty of the legal issues, and (3) the skill required to perform the legal service properly—the undersigned finds that no further adjustment to the lodestar is necessary. Weil and Fish represented Movants with a high degree of skill and professionalism, and their efforts yielded a favorable result for Cenveo and O'Neil.

## Recommendation

The Court should enter a final judgment awarding $270,769.20 in attorneys' fees to Weil and $132,098.40 in attorney's fees to Fish.

**SIGNED** June 12, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).